**AMERICAN LAUNDRY MACHINERY CO v**

**C. B. & Q. R. R. CO.**

Ohio Appeals, 1st Dist, Hamilton Co

No. 3785.  Decided Feb 9, 1931

J. R. Rohrer, Cincinnati, for American Laundry Co.

A. B. Benedict and C. G. Werner, Cincinnati, for C. B. & Q. R. R. Co.

ROSS, PJ.

What then in this case were the activities of the Railroad Company as performed through its agent?

John C. Bayer, upon whom service for the Railroad was made, testified that he was "General Agent of the Chicago, Burlington & Quincy Railroad Company in Cincinnati."

The door of the office maintained in the City of Cincinnati by the Railroad bore the following inscription:  "Chicago, Burlington & Quincy Railroad Co., Colorado and Southern Railway Co., Ft. Worth and Denver City Ry. Co., General Agent."

A number of personal cards of the General Agent and his subordinates were introduced in evidence.  These bore the name of the appropriate person and the title, such as "General Agent," "City Freight Agent," "Traveling Freight Agent," "Traveling Passenger Agent," "City Passenger Agent," "Chief Clerk," and the names of the three Railroads and office address, and in most cases the telephone number of the office.

The Agent testified he was in charge of the subordinates and was responsible to the Assistant to the Manager in Chicago.  One and sometimes two stenographers were on duty in the office.  The territory under the jurisdiction of the office included parts of Ohio, Kentucky, West Virginia and Virginia.

Some of the employes solicited business. In some cases when through tickets were desired, the agent would take the money and secure the tickets for the customer from other connecting lines, or get the tickets, leaving an I. O. U. and later pay for the tickets upon receiving payment from the customer.

As to freight claims, the Agent stated:

24

"We have made it a practice the friendship between our company and the shippers or consignee in our territory, that if they have claims against our company if they will take it up with us to go in with our general office at Chicago. **If we feel there is any justice in the claim, we will endeavor to straighten it out otherwise we have nothing to do with it.**"

The Cincinnati office has nothing to do with rate adjustments, does not issue bills of lading, or sell tickets for the Cincinnati, Burlington & Quincy Railroad. A supporting affidavit was also filed in which it is averred that the Railroad has no tracks within the State of Ohio, that the General Agent, Bayer, and his subordinates were located in Cincinnati for the mere purpose of soliciting business for the Railroad, that is the soliciting of shipments of freight and inducing passengers to ride upon its cars; that no contracts were made by anyone in the Cincinnati office of the Railroad.

Such are the facts in the case.

In approaching a decision of whether or not the Railroad was doing business in this state we have in mind the language of the Supreme Court of the United States in Railway Co. v Alexander, supra, p. 227:

"This court has decided each case of this character upon the facts brought before it and has laid down no all-embracing rule by which it may be determined what constitutes the doing of business by a foreign corporation in such manner as to subject it to a given jurisdiction. In a general way it may be said that the business must be such in character and extent as to warrant the inference that the corporation has subjected itself to the jurisdiction and laws of the district in which it is served and in which it is bound to appear when a proper agent has been served with process. Lafayette Ins. Co. v French, supra, p. 407; Green v Chicago, Burlington & Quincy Ry. Co., supra, p. 532."

In this case while some weight is evidently given by the court to the fact that a closely associated railroad, making together what was termed the "Cotton Belt Route," terminated at the place of service, at least equal force is given to the exercise of discretion by the Agent over claims against the Railroad presented to him. This was also one factor considered in Price & Co. v Davis, Agent, supra.

In the instant case we have quoted from the record showing the agent exercised discretionary powers over claims presented.

We are unable to differentiate this case from either the Price case, supra, in which the court has taken a definite stand upon facts very similar to those herein, or the Alexander case, supra, in the Supreme Court, at the same time recognizing that the facts in the Green case, supra, are also very close to those in this case.

It is our conclusion, therefore, that the Court of Common Pleas erred in quashing the service, and its judgment will be reversed, and the cause remanded for such further proceedings as may be consistent with law.

HAMILTON and CUSHING, JJ, concur.